Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche Manning | Sitting Judge if Other than Assigned Judge | Edward A. Bobrick |
|---|---|---|---|
| **CASE NUMBER** | 99 C 3469 | **DATE** | 1/23/2002 |
| **CASE TITLE** | Bear Sterns & Co., Inc. vs. Joel Wyler, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Order. Plaintiff's motion to compel compliance by Joel Wyler with requests for production of document is granted, as limited by this court's order of November 15, 2001.

*/s/ Edward A. Bobrick*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | | number of notices |
| ✓ | Notices mailed by judge's staff. | | JAN 24 2002 date docketed |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials |
| ✓ | Copy to judge/magistrate judge. | | 1/23/2002 date mailed notice |
| TH ✓ | courtroom deputy's initials | 02 JAN 23 PM 2:25 Date/time received in central Clerk's Office | TH mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BEAR STERNS & CO., INC., )
)
Plaintiff, )
)
vs. ) No. 99 C 3469
) Judge Blanche M. Manning
JOEL WYLER, et al., ) Magistrate Judge Edward A. Bobrick
)
Defendants. )

## MEMORANDUM ORDER

Before the court is plaintiff's motion to compel compliance by Joel Wyler with requests for production of documents.

On June 28, 2001, plaintiff Bear Sterns & Company served its first set of requests for production of documents upon defendant Joel Wyler. Wyler responded by objecting to all requests for production, and asserting his Fifth Amendment privilege against self-incrimination. Plaintiff's second set of requests produced the same results. Plaintiff now moves for an order compelling Wyler to comply with the document requests.

Defendant Wyler is a Dutch businessman, and a citizen and resident of the Netherlands. (*Answer of Defendant Joel Wyler*, ¶ 2). He was a director of, and a significant investor in, Interquest Incorporated, a Canadian corporation with its principal place of business in Toronto, Canada, which was the parent of a Barbadian corporation, Interquest International. (*Complaint*, ¶ 4). Through Interquest International, Interquest Incorporated was heavily invested in another Canadian corporation, Middlegate

Investment Group. Middlegate's principal place of business was in Toronto, and it was involved in speculative investment ventures in China. (*Complaint*, ¶ 4). Plaintiff, a major brokerage firm, alleges that, in connection with raising funds for those ventures, Wyler induced one of plaintiff's managing directors–James Sitlington–to make false oral representations to one of plaintiff's customers and breach his fiduciary duties. The document requests at issue seek records pertaining to the three investment firms – Interquest International, Interquest Incorporated, and Middlegate – as well as Wyler's bank, wire transfer, and phone records, all for the relevant period spanning parts of 1996 to 1997.[1]

The matter presently before the court is whether defendant Wyler can stave off plaintiff's discovery requests by invoking the privilege against self-incrimination found in the Fifth Amendment to the U.S. Constitution. The parties have briefed this question, but they seemed to have missed what the court believes might be a significant issue: where exactly does the U.S. Constitution come into play. The privilege against self-incrimination has been extended to resident aliens. *U.S. v. Balsys*, 524 U.S. 666, 671, 118 S.Ct. 2218, 2222 (1998), *citing Kwong Hai Chew v. Colding*, 344 U.S. 590, 596, 73 S.Ct. 472, 477 (1953) (It is well established that if an alien is a lawful permanent resident of the United States and remains physically present there, he is a person within the

---

[1] This court's order of November 15, 2001, restricted the scope of the original document requests.

protection of the Fifth Amendment.). Wyler is a citizen and resident of the Netherlands. Arguably, he would appear to spend a significant amount of his time in Canada. He has business interests in Barbados and China. There is nothing to suggest he is a resident alien here–although he may be one of Canada. We fail to find it self-evident that the Fifth Amendment's privilege against self-incrimination is available to non-resident aliens. Wyler's failure to demonstrate the privilege's availability would be reason enough to grant plaintiff's motion to compel, were there not a further deficiency in Wyler's position.[2]

---

[2] The only case the court has found extending Fifth Amendment protection to aliens overseas is *U.S. v. Bin Laden*, 132 F.Supp.2d 168 (S.D.N.Y. 2001). There, the court concluded that a non-resident alien, "insofar as he is the present subject of a domestic criminal investigation, [was] protected by the privilege against self-incrimination guaranteed by the Fifth Amendment" where the custodial interrogation at issue was performed by U.S. agents overseas. 132 F.Supp. at 181. The court appeared comfortable with this extension because "any violation of the privilege occurs not at the moment law enforcement officials coerce statements . . .but when the defendant's involuntary statements are actually used against him at an American criminal proceeding." 132 F.Supp.2d at 181-82. The court was also informed by the Supreme Court's treatment of the privilege against self-incrimination as a fundamental trial right of criminal defendants. 132 F.Supp.2d at184. Clearly, Wyler's circumstances are rather divorced from those present in *Bin Laden*. We are not prepared to assume that, had Wyler addressed this significant issue, he would have been able to bring his situation within the court's reasoning, resting rather heavily as it did on the fact that the purported Fifth Amendment violation would perhaps be occurring in its American courtroom as a result of an ongoing criminal investigation.

Ignoring for the moment whether Wyler has the right to invoke the Fifth Amendment, we turn to the application of the Self-Incrimination Clause to the document requests at issue. The Fifth Amendment protects the person asserting the privilege only from testimony that is compelled; as the preparation and maintenance of business records is voluntary, no compulsion is involved. *United States v. Doe (Doe I)*, 465 U.S. 605, 610, 104 S.Ct. 1237, 1241 (1984). Thus, a person may not claim the Fifth Amendment's protections based upon the incrimination that may result from the contents or nature of the thing demanded. *Doe I*, 465 U.S. at 612, and n. 10, 104 S.Ct. at 1242, and n. 10; *Fisher v. United States*, 425 U.S. 391, 408-410, 96 S.Ct. 1569, 1579-1581 (1983). The Amendment's protection may nonetheless be implicated because the act of complying with the government's demand testifies to the existence, possession, or authenticity of the things produced. *See Doe v. United States (Doe II)*, 487 U.S. 201, 209, 108 S.Ct. 2341, 2346 (1988); *Doe I*, 465 U.S. at 612-614, and n. 13, 104 S.Ct. at 1242- 1243, and n. 13; *Fisher*, 425 U.S. at 410-413, 96 S.Ct. at 1580-582. Here, Wyler submits that by producing the documents in question, he would be conceding that they exist or are in his possession or control.

Beyond that, however, Wyler must demonstrate that this "testimony" would be incriminating. The Fifth Amendment privilege extends not only "to answers that would in themselves support a conviction ... but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant." *Ohio v. Reiner*, 532 U.S.

17, –, 121 S.Ct. 1252, 1254 (2001). Nevertheless, the privilege's protection extends only to witnesses who have "reasonable cause to apprehend danger from a direct answer." *Id.* That inquiry is for the court; the witness' assertion does not by itself establish the risk of incrimination. *Id.* A danger of "imaginary and unsubstantial character" will not suffice. *Id.* Here, Wyler does little to explain how the act of producing documents would pose a real danger of incrimination.

As already noted, the documents at issue include wire transfer records, telephone records, bank records, and documents relating to Interquest, International, and Middlegate. The question is how the production of these documents will be incriminating. Wyler seeks to establish this, initially, through a footnote stating: "It is undisputed that a criminal investigation was opened relating to the events described in the Complaint–indeed, James Sitlington is now in federal prison as a result." (*Defendant Joel Wyler's Response*, at 3 n.3). Wyler then elaborates as follows:

> As to the potentially "incriminating" nature of the responses for purposes of Fifth Amendment protections, Wyler need not show that each document produced could be introduced into evidence against him in a criminal proceeding. It is sufficient that the prosecution might use what it learns from the production to locate potentially incriminating information. Hubbell, 530 U.S. at 37, 147 L.Ed.2d at 37. The Supreme Court in Hubbell found that the act of responding to a broadly worded document subpoena was incriminating because it informed prosecutors of the existence and location of potential sources of information. "[I]t is undeniable that providing a catalog of existing documents fitting within any of the 11 broadly worded subpoena categories could provide a prosecutor with a 'lead to incriminating evidence,' or 'a link in the chain of evidence needed to prosecute.'" *Id.* at 42, 147 L.Ed.2d at 39 (emphasis added).

(*Defendant Joel Wyler's Response*, at 6).

Wyler's reliance on *United States v. Hubbell*, 530 U.S. 27, 120 S.Ct. 2037 (2000), without any indication of how it relates to the document production at issue here is unavailing. In *Hubbell*, the respondent entered a plea agreement in which he agreed to furnish the government with "full, complete, accurate, and truthful information about matters relating to the government's Whitewater investigation. 530 U.S. at 30, 120 S.Ct. at 2040. The government then initiated a second investigation to determine whether the respondent was complying with this agreement. *Id.* It served respondent with a subpoena seeking production of 11 categories of documents which, essentially encompassed information about matters relating to Whitewater. 530 U.S. at 31, 120 S.Ct. at 2040, 2048-50. The respondent invoked the Fifth Amendment, and was eventually granted use and derivative use immunity under 18 U.S.C. §§ 6002 and 6003(a). The respondent then produced the documents, and the government subsequently embarked upon a prosecution for tax-evasion and wire fraud based on their contents. 530 U.S. at 31, 120 S.Ct. at 2040-41.

The district court dismissed the ensuing indictment, finding that the government had violated the immunity statute by making use of evidence gained in a "quintessential fishing expedition." 530 U.S. at 32, 120 S.Ct. at 2041. On appeal, the government argued that the respondent's act of producing the documents was insufficiently "testimonial" because the existence of such business records was a "foregone

conclusion," relying on the Supreme Court's decision in *Fisher*.[3] *U.S. v. Hubbell*, 167 F.3d 552, 569-72 (D.C.Cir. 1999). The appellate court rejected this notion, and remanded the matter to the district court for a determination as to the extent of the government's foreknowledge concerning the documents at issue. 167 F.3d at 581.

On remand, the government could not satisfy the court that it had a "prior awareness" with "reasonable particularity," and entered into yet another plea agreement with respondent. *Hubbell*, 530 U.S. at 33, 120 S.Ct. at 2042. The Supreme Court granted *certiorari* to "determine the precise scope of a grant of immunity with respect to the production of documents in response to a subpoena." 530 U.S. at 34, 120 S.Ct. at 2042. The government again argued that the communicative aspect of the respondent's act of production of the documents was insufficiently testimonial, relying on the "foregone conclusion" rationale of the Supreme Court's decision in *Fisher*. 530 U.S. at 44, 120 S.Ct. 2047. Justice Stevens, writing for all justices except the Chief Justice who

---

[3] In *Fisher*, the defendants had given records prepared by their accountants to their attorneys. The Court found that compulsory acquisition of voluntarily prepared records having incriminating content did not amount to compulsion of testimony any more than did the similar acquisition of incriminating physical evidence. While the Court acknowledged that the act of producing such documents could have "communicative aspects" that might be testimonial, it found that the production of the documents at issue–which accountants had prepared in the course preparing defendants' tax returns–was not sufficiently testimonial as the existence of such records was a "foregone conclusion" and defendants' act of production added "little or nothing to the sum total of the Government's information." *Fisher*, 425 U.S. at 411, 96 S.Ct. at 1581.

dissented, distinguished *Fisher* on the ground that in *Fisher* the government knew of the existence and location of the accounting records, while in *Hubbell*, the government had no prior knowledge of either the existence or the whereabouts of the 13,000 pages of documents respondent produced. The Court dismissed the government's suggestion that "a businessman such as respondent will always possess general business and tax records that fall within the broad categories described in this subpoena" as "overbroad." 530 U.S. at 45, 120 S.Ct. at 2048.

The Court concluded "that respondent's act of production had a testimonial aspect, at least with respect to the existence and location of the documents" and, as a result, the "respondent could not be compelled to produce those documents without first receiving a grant of immunity under § 6003." 530 U.S. at 45, 120 S.Ct. at 2048. That immunity would necessarily be coextensive with the Fifth Amendment privilege, the Court continued, and under *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653 (1972), the indictment against respondent had to be dismissed because the government could not prove that the evidence it would use at trial was derived from legitimate sources wholly independent from the testimonial aspect of respondent's immunized conduct. 530 U.S. at 45, 120 S.Ct. at 2048.

As is perhaps suggested by Wyler's failure to deal with the facts of this case, the matter before us is different in many respects from that in *Hubbell*. It is as if Wyler expects this court to make a leap of faith from his rather unadorned evocation of *Hubbell*

to the incriminating nature of the production at issue in the instant case. To begin with, in *Hubbell,* the incriminatory nature of the production of the documents sought was obvious. The respondent was already incarcerated as a result of one investigation and he was the target of a second. Indeed, the second investigation was directed at whether the respondent was in compliance with a plea agreement – resulting from the first investigation – requiring him to produce information relating to the Whitewater investigation. If the respondent had produced such information in response to the subpoena, it would have constituted testimony that he had Whitewater information that he had not provided–it would be an admission that he failed to comply with the plea agreement. Accordingly, it was the testimonial aspect of the production that concerned the Court in *Hubbell.* 530 U.S. at 36-44 120 S.Ct. at 2043-48. At the appellate court level, the court specifically found that respondent's acknowledgment of the existence of certain records sought in the government's subpoena would be directly incriminating. *Hubbell,* 167 F.3d at 582. Thus, if there was a "forgone conclusion" in the *Hubbell* case, it was that the act of producing the documents at issue was incriminating. In the instant case, Wyler fails to explain how his production of the documents at issue would have an incriminating aspect.

A witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself; his assertion does not of itself establish the hazard of incrimination. *Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 817 (1951);

*U.S. v. Hubbell*, 167 F.3d 552, 581 (D.C.Cir. 1999) *aff'd Hubbell, supra; Martin-Trigona v. Gouletas*, 634 F.2d 354, 360 (7th Cir. 1980). The questions of whether the act of production is both "testimonial" and "incriminating" do not lend themselves to categorical answers. *Fisher v. United States*, 425 U.S. 391, 410, 96 S.Ct. 1569, 1581 (1976). They depend on the facts of the individual case. *Id.* A witness must tender some credible reason why a response would pose a real danger of incrimination. *Martin-Trigona*, 635 F.2d at 360, *citing Zicarelli v. New Jersey State Commission of Investigation*, 406 U.S. 472, 478, 92 S.Ct. 1670, 1674 (1972). Here, Wyler has made no attempt to tender a reason why the production of the documents at issue would be incriminating. The court does not require a showing that there is a pending criminal investigation, or anything as obvious as was the case in *Hubbell*, but there must be some explanation, some set of facts, that would lead the court to the conclusion at which Wyler hopes we arrive. As the plaintiff notes, it is not a crime to make a wire transfer, use the phone, or possess corporate records. While the production of such records may be testimonial, Wyler has simply provided the court with no information to suggest how the testimonial aspects of that production might be incriminating. His treatment of the issue in his brief leaves the court with the distinct impression that it is the content of the documents that might be incriminating, as opposed to the testimonial aspects of the production of those documents.

In the end, Wyler's response to the plaintiff's motion to compel raises more questions than it answers. He is a Dutch citizen residing in the Netherlands with business

interests in Canada, China, and Barbados, yet he does not address the question of whether he can avail himself of the protection of the Fifth Amendment of the U.S. Constitution. He asserts that, if he were to produce the documents sought in plaintiff motion to compel, that act of production would incriminate him, yet he does not tender a reason why that might be so. Based on the record before us, then, we have no choice but to reject his assertion of the privilege against incrimination and grant the plaintiff's motion.

## CONCLUSION

Plaintiff's motion to compel compliance by Joel Wyler with requests for production of documents in GRANTED, as limited by this court's order of November 15, 2001.

ENTERED: *[signature]*
EDWARD A. BOBRICK
U.S. MAGISTRATE JUDGE

**Date:** January 23, 2001